UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOSEPH LIMAURO,

                              Plaintiff,                              20-CV-03558 (CM)

                         - against -

CONSOLIDATED EDISON COMPANY OF NEW
YORK, INC., CHRISTOPHER JANUSZ, THOMAS
BARRETT, and CONROY MCPHERSON,

                              Defendants.


**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS OF
DEFENDANTS CONSOLIDATED EDISON COMPANY OF NEW YORK, INC.,
CHRISTOPHER JANUSZ, AND CONROY MCPHERSON**


CHRISTOPHER A. D'ANGELO
Attorney for Defendants Consolidated Edison
 Company of New York, Inc. ("Con Edison"),
 Christopher Janusz, and Conroy McPherson
4 Irving Place, 18th Floor
New York, New York 10003

**OF COUNSEL:**
 Paul Limmiatis
 212-460-2571


July 13, 2020

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ............................................................................... 1

FACTUAL BACKGROUND .................................................................................... 2

ARGUMENT .............................................................................................................. 4

POINT I  PLAINTIFF'S DISABILITY DISCRIMINATION CLAIMS FAIL TO STATE A
CLAIM UPON WHICH RELIEF CAN BE GRANTED. ................................... 4

A.      The Complaint fails to allege facts to plausibly suggest that Plaintiff was
subjected to an adverse employment action because of unlawful disability
discrimination. ................................................................................................ 4

      1.      The Complaint fails to plausibly allege that Plaintiff was subjected to any adverse
employment actions other than the termination of his employment. ............................5

      2.      The Complaint fails to allege facts to establish that Plaintiff was otherwise
qualified to perform the essential functions of his job. ................................................7

B.      The Complaint fails to allege facts to establish a reasonable accommodation
claim................................................................................................................ 10

      1.      Leaving work one hour early on Tuesdays to see a therapist.......................... 12

         a.   The Complaint fails to state a claim. ................................................... 12

         b.   The claim is barred by the statute of limitations.................................. 13

      2.      Temporary leave of absence........................................................................... 13

      3.      "Honoring" the medical restrictions imposed by Con Edison ...................... 13

C.      The Complaint fails to allege facts to establish a hostile work
environment. .................................................................................................. 14

D.      The Complaint fails to state a claim under the NYSHRL. ................................. 14

E.      The Complaint fails to state a claim under the NYCHRL............................... 15

F.      The Complaint fails to state a claim against McPherson or Barrett. ................... 16

POINT II  THE COMPLAINT FAILS TO STATE A CLAIM UNDER FMLA…… .................. 17

A.      Termination and alleged denial of reinstatement................................................ 18

      1.      Interference ..................................................................................................... 18

i

2.    Retaliation…..................................................................................................... 19

B.    Alleged denial of "intermittent leave" for a half-hour on Tuesdays.................................... 20

C.    The drug test and denial of "progressive discipline/performance management" ........................................................................................................ 21

POINT III  THE COMPLAINT FAILS TO STATE A RETALIATION CLAIM. ....................... 21

POINT IV  THE COMPLAINT FAILS TO STATE A CLAIM UNDER THE NYLL................. 24

CONCLUSION.................................................................................................................... 25

# TABLE OF CASES

Page

*Anderson v. Nat'l Grid, PLC,*
   93 F. Supp. 3d 120 (E.D.N.Y. 2015) ......................................................................... 11

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ...................................................................................... 1-2, 8

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) ...................................................................................... 1-2, 8

*Cabrera v. CBS Corp.,*
   2018 WL 1225260 (S.D.N.Y. Feb. 26, 2018) ........................................................... 25

*Clark Cty. Sch. Dist. v. Breeden,*
   532 U.S. 268 (2001) ................................................................................................ 22

*Colas v. City Univ. of New York,*
   2019 WL 2028701 (E.D.N.Y. May 7, 2019) ............................................................. 24

*Cruz v. Wyckoff Heights Med. Ctr.,*
   2016 WL 5339540 (S.D.N.Y. Sep. 23, 2016) ........................................................... 20

*D'Amico v. City of New York,*
   132 F.3d 145 (2nd Cir.), *cert. denied*, 524 U.S. 911 (1998) ...................................... 13

*Dejesus v. HF Mgmt. Servs., LLC,*
   726 F.3d 85 (2nd Cir. 2013), *cert. denied*, 571 U.S. 1128 (2014) ........................ 24-25

*Dimps v. Taconic Corr. Facility,*
   2019 WL 1299844 (S.D.N.Y. Mar. 20, 2019), *aff'd in relevant part*, 802 Fed. App'x 601
   (2nd Cir. 2020) ........................................................................................................ 8

*Dollinger v. New York State Ins. Fund,*
   726 Fed. App'x 828 (2nd Cir. 2018) ....................................................................... 14

*Dominelli v. N. Country Acad.,*
   2016 WL 6833992 (N.D.N.Y. Nov. 18, 2016) ......................................................... 10

*Farina v. Cty. of Orange,*
   2018 WL 10704514 (S.D.N.Y. Jun. 27, 2018) ..................................................... 13-14

*Flynn v. McCabe & Mack LLP,*
   2018 WL 794631 (S.D.N.Y. Feb. 8, 2018), *appeal withdrawn*, 2018 WL 4348054
   (2nd Cir. Jul. 13, 2018) ....................................................................................... 11-12

*Forman v. City of New York*,
   2017 WL 1167334 (S.D.N.Y. Mar. 27, 2017) ....................................................... 4

*Fox v. Costco Wholesale Corp.*,
   918 F.3d 65 (2nd Cir. 2019) ............................................................................... 14

*Frazier v. City of New York Dep't of Correction*,
   2016 WL 4444775 (E.D.N.Y. Aug. 23, 2016) ..................................................... 21

*Gachette v. Metro N.-High Bridge*,
   722 Fed. App'x 17 (2nd Cir. 2018) ..................................................................... 16

*Galabya v. New York City Bd. of Educ.*,
   202 F.3d 636 (2nd Cir. 2000) ............................................................................... 5

*Geromanos v. Columbia Univ.*,
   322 F. Supp. 2d 420 (S.D.N.Y. 2004) ................................................................. 19

*Gonzalez v. City of New York*,
   377 F. Supp. 3d 273 (S.D.N.Y. 2019) ............................................................. 15-16

*Graziadio v. Culinary Inst. of Am.*,
   817 F.3d 415 (2nd Cir. 2016) ......................................................................... 18-19

*Griffin v. Brighton Dental Grp.*,
   2013 WL 1221915 (W.D.N.Y. Mar. 25, 2013) ..................................................... 17

*Guardino v. Vill. of Scarsdale Police Dep't*,
   815 F. Supp. 2d 643 (S.D.N.Y. 2011) .............................................................. 8, 10

*Hardy v. Pepsi Bottling Co. of New York, Inc.*,
   2016 WL 1301181 (S.D.N.Y. Mar. 31, 2016), *aff'd*, 690 Fed. App'x 60 (2nd Cir. 2017) .............. 6

*Harvin v. Manhattan & Bronx Surface Transit Operating Auth.*,
   767 Fed. App'x 123 (2nd Cir. 2019) ................................................................... 11

*Hazelwood v. Highland Hosp.*,
   763 Fed. App'x 60 (2nd Cir. 2019) ..................................................................... 11

*Ivankovskaya v. Metro. Transportation Auth. Bus Co.*,
   2017 WL 3328166 (E.D.N.Y. Aug. 3, 2017) ....................................................... 17

*Jacques v. DiMarzio, Inc.*,
   386 F.3d 192 (2nd Cir. 2004) ............................................................................... 9

*James v. John Jay Coll.*,
   2020 WL 1911211 (S.D.N.Y. Apr. 20, 2020) ...................................................... 16

*Katz v. Metro. Life Ins. Co.*,
   1998 WL 132945 (S.D.N.Y. Mar. 20, 1998) ............................................................ 8

*Langella v. Mahopac Cent. Sch. Dist.*,
   2020 WL 2836760 (S.D.N.Y. May 31, 2020) .......................................................... 14

*Lee v. Berryhill*,
   2019 WL 367834 (S.D.N.Y. Jan. 30, 2019), *aff'd*, 802 Fed. App'x 663 (2nd Cir. 2020) ................ 6

*Licatesi v. Penauille Servisair*,
   2010 WL 11627294 (E.D.N.Y. Mar. 17, 2010) ...................................................... 23

*Locorriere v. NBTY, Inc.*,
   2016 WL 625618 (E.D.N.Y. Feb. 17, 2016) .......................................................... 14

*Lundy v. Catholic Health Sys. of Long Island Inc.*,
   711 F.3d 106 (2nd Cir. 2013) ........................................................................... 24

*Macfarlan v. Ivy Hill SNF, LLC*,
   675 F.3d 266 (3rd Cir. 2012) ........................................................................... 19

*Mayo v. PCC Structurals, Inc.*,
   795 F.3d 941 (9th Cir. 2015) ............................................................................. 9

*McBride v. BIC Consumer Prod. Mfg. Co.*,
   583 F.3d 92 (2nd Cir. 2009) ........................................................................... 11

*McKenzie v. Meridian Capital Grp., LLC*,
   35 A.D.3d 676 (2nd Dep't 2006) ............................................................... 14-15, 22

*Miller v. Mchugh*,
   2016 WL 698147 (S.D.N.Y. Feb. 19, 2016) ......................................................... 11

*Mobley v. Madison Square Garden LP*,
   2012 WL 2339270 (S.D.N.Y. Jun. 14, 2012) ........................................................ 15

*Moran v. Wegmans Food Markets, Inc.*,
   65 F. Supp. 3d 327 (W.D.N.Y. 2014) ................................................................. 8

*Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*,
   723 F.3d 192 (2nd Cir. 2013) ....................................................................... 24-25

*Noia v. Orthopedic Assocs. of Long Island*,
   93 F. Supp. 3d 13 (E.D.N.Y. 2015) .................................................................. 21

*Noll v. Int'l Bus. Machines Corp.*,
   787 F.3d 89 (2nd Cir. 2015) ......................................................................... 11-12

*Pabon v. New York City Transit Auth.*,
   703 F. Supp. 2d 188 (E.D.N.Y. 2010)............................................................................... 9

*Palma v. Cty. of Stanislaus*,
   2017 WL 6513282 (E.D. Cal. Dec. 20, 2017)..............................................................8-10

*Parisi v. Coca-Cola Bottling Co. of New York*,
   995 F. Supp. 298 (E.D.N.Y. 1998), *aff'd*, 172 F.3d 38 (2nd Cir. 1999)......................... 7

*Perez v. Metro. Transp. Auth.*,
   2012 WL 1943943 (S.D.N.Y. May 29, 2012)................................................................... 5

*Pimentel v. City of New York*,
   2001 WL 1579553 (S.D.N.Y. Dec. 11, 2001)................................................................. 10

*Reid v. Time Warner Cable New York City LLC*,
   2018 WL 1701932 (E.D.N.Y. Mar. 30, 2018) .............................................................22-23

*Rivera v. Crowell & Moring L.L.P.*,
   2016 WL 796843 (S.D.N.Y. Feb. 18, 2016) .................................................................. 20

*Roberts v. Health Ass'n*,
   308 Fed. App'x 568 (2nd Cir. 2009) ...........................................................................18-19

*Ross v. New York*,
   2017 WL 354178 (S.D.N.Y. Jan. 24, 2017) .................................................................. 13

*Sarno v. Douglas Elliman-Gibbons & Ives, Inc.*,
   183 F.3d 155 (2nd Cir. 1999) ...................................................................................18-19, 21

*Scalercio-Isenberg v. Morgan Stanley Servs. Grp. Inc.*,
   2019 WL 6916099 (S.D.N.Y. Dec. 19, 2019)............................................................... 17

*Shannon v. New York City Transit Auth.*,
   332 F.3d 95 (2nd Cir. 2003) ......................................................................................... 4

*Silverstein v. Massapequa Union Free Sch. Dist.*,
   2019 WL 4888673 (E.D.N.Y. Sep. 30, 2019)............................................................... 25

*Simon v. City of New York*,
   2019 WL 916767 (S.D.N.Y. Feb. 14, 2019) ................................................................ 15

*Smith v. Town of Ramapo*,
   2017 WL 2983027 (S.D.N.Y. Jul. 12, 2017) ................................................................ 8

*Stern v. State Univ. of New York*,
   2018 WL 4863588 (E.D.N.Y. Sep. 30, 2018)............................................................... 24

*Sutter v. Dibello*,
  2019 WL 4195303 (E.D.N.Y. Aug. 12, 2019), *report and recommendation adopted*,
  2019 WL 4193431 (E.D.N.Y. Sep. 4, 2019) ..........................................................................20-22

*Tilley v. ADM Sec. Investigations*,
  2008 WL 795313 (E.D.N.Y. Mar. 24, 2008) ............................................................................ 10

*Turner v. Eastconn Reg'l Educ. Serv. Ctr.*,
  2013 WL 6230092 (D. Conn. Dec. 2, 2013), *aff'd*, 588 Fed. App'x 41 (2nd Cir. 2014) .............. 20

*Vitti v. Macy's Inc.*,
  758 Fed. App'x 153 (2nd Cir. 2018) ...................................................................................... 4, 7

*Vuono v. Consol. Edison of New York, Inc.*,
  2019 WL 2433654 (S.D.N.Y. Jun. 11, 2019) .............................................................................. 5

*White v. Bridge Inc.*,
  2019 WL 4805896 (S.D.N.Y. Sep. 30, 2019) ........................................................................... 16

*Williams v. Metro-N. Commuter R. Co.*,
  2013 WL 4054718 (S.D.N.Y. Aug. 6, 2013), *app. dismissed*, No. 13-3421
  (2nd Cir. Jan. 13, 2014) ........................................................................................................ 22

*Williams v. New York City Hous. Auth.*,
  61 A.D.3d 62 (1st Dep't 2009) ..........................................................................................15-16

*Witchard v. Montefiore Med. Ctr.*,
  103 A.D.3d 596, 596 (1st Dep't), *lv. denied*, 22 N.Y.3d 854 (2013) ......................................22

*Zabar v. New York City Dep't of Educ.*,
  2020 WL 2423450 (S.D.N.Y. May 12, 2020) ........................................................................... 11

*Zick v. Waterfront Comm'n of New York Harbor*,
  2012 WL 4785703 (S.D.N.Y. Oct. 4, 2012) ............................................................................. 15

## PRELIMINARY STATEMENT

How on Earth can a Supervisor supervise if substantially limited in the ability to interact with others? (*See* Complaint ¶ 14). The Complaint in this case provides no clue. It does ***not*** allege that Plaintiff disclosed this limitation (or any of the other physical and mental limitations that allegedly have long afflicted him) at the outset of his employment with Con Edison in November 2017 (or better yet, in his post-offer, pre-employment medical examination, *see* 42 U.S.C. § 12112(d)(3)). As a practical matter, Plaintiff's inability to effectively interact with others, and his failure to raise this issue with Con Edison at the start of his employment, would certainly foreshadow his eventual discharge 18 months later for poor performance.

Foreshadowing aside, the Complaint is grossly deficient and should be dismissed in its entirety for failing to satisfy the pleading standards set forth by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).

The Plaintiff, Joseph Limauro, worked for Con Edison as a Construction Supervisor at the sprawling East River power plant on the lower east side of Manhattan, from November 2017 to early March 2019. He then went out on medical leave for approximately 10 weeks. He returned to work on May 28, 2019. Upon his return, he was sent for a duty-status medical examination that resulted in the imposition of medical restrictions including no walking, standing, or climbing for more than three to six hours per day. Accordingly, his supervisor, Christopher Janusz, assigned him to catch up on required, online training. On May 31, 2019, Plaintiff was informed by then-Operations Manager Thomas Barrett, and Human Resources Senior Specialist Conroy McPherson, that his employment with Con Edison was being terminated for poor work performance and failure to satisfy the essential requirements of the job.

Plaintiff brings this action claiming disability discrimination – based on alleged disparate treatment, failure to provide a reasonable accommodation, and hostile work environment – under

the Americans with Disabilities Act (ADA), the New York State Human Rights Law (NYSHRL), and the New York City Human Rights Law (NYCHRL); interference with protected rights and retaliation under the Family and Medical Leave Act (FMLA); retaliation under the ADA, the NYSHRL, and the NYCHRL; and unpaid overtime compensation under the New York Labor Law (NYLL). Plaintiff attempts to make a federal case out of being allowed to leave work only a half-hour early on Tuesdays beginning in September 2018, instead of the full hour that he preferred, to attend weekly appointments with his therapist. But the Complaint provides no inkling that this denied half-hour had any impact on Plaintiff's ability to perform the essential functions of his job – functions the Complaint fails to even identify. Plaintiff also attempts to foist invalid claims on the back of the two-day training assignment in May 2019, which he frivolously mischaracterizes as a denial of reinstatement to his regular job. Stripped down to its core, the Complaint teeters on nothing more than the timing of Plaintiff's discharge – three days after his return from medical leave. The rest is kitchen-sink variety nonsense. The Complaint names as defendants Con Edison, Janusz, Barrett, and McPherson.

On the grounds argued more fully below, Defendants Con Edison, Janusz, and McPherson move to dismiss the Complaint in its entirety, pursuant to Fed. R. Civ. P. 12(b)(6), for failure to state a claim upon which relief can be granted.

## FACTUAL BACKGROUND

The Complaint's relevant allegations – after striking the labels, conclusions, and mere recitations of the legal claims, *Iqbal*, 556 U.S. at 678; *Twombly,* 550 U.S. at 555 – are as follows:

In November 2017, Plaintiff gained employment with Con Edison as a Construction Supervisor, despite suffering from mental and physical disabilities that substantially limited his ability to interact with others, care for himself, and walk. (Complaint ¶¶ 9, 14-16). In September 2018, Plaintiff's post-traumatic stress disorder and major depressive disorder symptoms became

"more severe," with "more frequent flare ups" that required "regular visits to a therapist." (*Id.* ¶ 17). Plaintiff's regular shift ended at 3:30 pm. (*Id.* ¶ 30). He believed he needed to leave work a full hour early on Tuesdays "to visit his therapist in the afternoon before the therapist's office closed for the evening." (*Id.* ¶ 21). Janusz granted Plaintiff's request to leave early on Tuesdays, but allowed him only a half-hour. (*Id.* ¶ 23). Over the ensuing months, Plaintiff regularly met with his therapist on Tuesdays. He was "often late to his appointments and on a few occasions missed his appointments." (*Id.* ¶ 25). Nonetheless, the therapy successfully mitigated his "more severe" symptoms and "more frequent flare ups," to the extent of allowing him to continue attending work without the need for medical leave or any other accommodation. (*Id.* ¶¶ 30-31).

In March 2019, Plaintiff "experienced a flare up of symptoms related to his gout and osteoarthritis" that prevented him from walking, which prevented him from working. (*Id.* ¶¶ 41-43). He requested FMLA leave, which Con Edison granted. (*Id.* ¶¶ 43, 46-47). He was off work for approximately ten weeks. He returned to work on May 28, 2019, and was sent for a fitness-for-duty exam with "the Company doctor" – who imposed temporary restrictions limiting Plaintiff's walking, standing, or climbing to no more than three to six hours per day. (*Id.* ¶¶ 46, 48-50, 54). Janusz believed these medical restrictions prevented Plaintiff from performing essential functions of his job – at least while the restrictions remained in place. (*Id.* ¶ 53).

On or about May 29, 2019, Janusz instructed Plaintiff to complete "his yearly training certifications, which involved online classes." (*Id.* ¶ 57). Undisputedly, this assignment did not require Plaintiff to walk, stand, or climb for more than three to six hours per day, and thus, fully complied with his medical restrictions. Plaintiff spent about two days on this training. (*Id.* ¶ 67).

On May 29, 2019, Plaintiff was sent for a random drug test. (*Id.* ¶ 60). Afterwards, he spoke with Janusz about it and allegedly expressed his belief that he was "targeted" for the drug test "because of his disabilities and/or accommodation requests." (*Id.* ¶ 66).

3

On May 30, 2019, Plaintiff was told to report the next morning to Operations Manager Barrett. Plaintiff was "concerned" because he "did not commonly meet with Barrett as part of his job duties." Plaintiff called Janusz, who was not in, and left two voice-mail messages expressing "further protected concerns." He never heard back from Janusz. (*Id.* ¶¶ 67-69).

On May 31, 2019, Plaintiff met with Barrett and McPherson, who informed Plaintiff that his employment was being terminated for poor performance. (*Id.* ¶¶ 70-71).

## ARGUMENT

### POINT I

### PLAINTIFF'S DISABILITY DISCRIMINATION CLAIMS FAIL TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

**A.    The Complaint fails to allege facts to plausibly suggest that Plaintiff was subjected to an adverse employment action because of unlawful disability discrimination.**

To establish a *prima facie* case of disability discrimination under the ADA, the plaintiff must establish that (1) the employer is subject to the ADA; (2) the plaintiff has a "disability"; (3) the plaintiff was otherwise qualified to perform the essential functions of the job, with or without reasonable accommodation; and (4) the employer subjected the plaintiff to an adverse employment action because of the disability. *Vitti v. Macy's Inc.*, 758 Fed. App'x 153, 156 (2nd Cir. 2018); *Shannon v. New York City Transit Auth.*, 332 F.3d 95, 99 (2nd Cir. 2003); *see also* 42 U.S.C. § 12112(a) (prohibiting discrimination "against a qualified individual on the basis of disability"); *id.*, § 12111(8) (defining "qualified individual" as "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position"). To survive a motion to dismiss, the Complaint must allege facts sufficient to render plausible each element of the *prima facie* case. *See*, *e.g.*, *Forman v. City of New York*, 2017 WL 1167334, **4-5 (S.D.N.Y. Mar. 27, 2017). Con Edison moves to dismiss on grounds the Complaint fails to allege facts sufficient to establish the third and fourth elements.

4

1. **The Complaint fails to plausibly allege that Plaintiff was subjected to any adverse employment actions other than the termination of his employment.**

The Complaint purports to identify four adverse employment actions – (1) the drug test, (2) the two-day training assignment, (3) the denial of "progressive discipline/performance management," and (4) the termination (Complaint ¶¶ 48, 57, 100, 125, 149), but only the termination constitutes an adverse employment action as a matter of law.

An adverse employment action requires a "materially adverse change in the terms and conditions of employment," such as "a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, [or] significantly diminished material responsibilities. . . . To be 'materially adverse' a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities." *Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 640 (2nd Cir. 2000) (internal quotations omitted). Rather, the change must be "so significant as to constitute a setback to the plaintiff's career." *Id.* at 641. Here, the drug test, the two-day training assignment, and the denial of progressive discipline plainly fail to meet these demanding standards.

Simply put, a drug test is not an adverse employment action. *See*, *e.g.*, *Vuono v. Consol. Edison of New York, Inc.*, 2019 WL 2433654, *2 (S.D.N.Y. Jun. 11, 2019) ("drug and alcohol testing by an employer is generally not an adverse action under [ADA] Section 12112(a)"); *Perez v. Metro. Transp. Auth.*, 2012 WL 1943943, *9 (S.D.N.Y. May 29, 2012) ("subjecting Plaintiff to four drug tests over a period of one-year does not rise to a sufficiently disruptive level" to constitute an adverse employment action). The Complaint, while baselessly labeling the drug test as "discriminatory," "retaliatory," and "unjustified," does not even bother to allege that it changed the terms or conditions of Plaintiff's employment in any way. (Complaint ¶¶ 65-66). Accordingly, the discrimination claims based on the drug test fail as a matter of law.

Likewise, the two-day training assignment effected no material change in the terms or conditions of Plaintiff's employment. The Complaint absurdly mischaracterizes this assignment as a denial of reinstatement to Plaintiff's "prior position." (Complaint ¶¶ 57-58, 100). To the contrary, the context of this assignment is clear: when Plaintiff returned to work after an extended leave of absence, he was assigned to catch up on his required training. Plaintiff does **not** allege that he was reassigned to a new position, that this training was beyond the scope of his regular job, that the assignment was anything other than temporary, that he was demoted or his job title changed, that his compensation or benefits were reduced, or that the training significantly diminished his regular job responsibilities. In fact, the Complaint describes this training as Plaintiff's "yearly training certifications" (*id.* ¶ 57) – meaning, quite obviously, that it was required for his job as a Construction Supervisor. *See Lee v. Berryhill*, 2019 WL 367834, **5-6 (S.D.N.Y. Jan. 30, 2019) (assignments within employee's regular job responsibilities are not "materially adverse"), *aff'd*, 802 Fed. App'x 663 (2nd Cir. 2020). Contrary to the Complaint's illusory labels and conclusions, the allegations of fact make clear that Plaintiff was in fact reinstated to his regular job. Janusz merely assigned him to complete required training courses – work he undoubtedly could perform within his medical restrictions. (Complaint ¶ 57). *See Hardy v. Pepsi Bottling Co. of New York, Inc.*, 2016 WL 1301181, *6 n.6 (S.D.N.Y. Mar. 31, 2016) ("temporary reassignment to a lighter shift undertaken with the intent to ease [plaintiff] back into his job following an extended absence fails to rise to the level of an adverse employment action"), *aff'd*, 690 Fed. App'x 60 (2nd Cir. 2017). Plaintiff cannot seriously contend that he was permanently reassigned to a job involving nothing but online training. Unquestionably, this two-day training assignment was not an adverse employment action, and the claims alleging that Con Edison "refus[ed] to reinstate" him "to his prior position" (Complaint ¶¶ 100, 125, 149) fail as a matter of law.

The alleged denial of "progressive discipline/performance management" also fails to constitute an adverse employment action. Plaintiff asserts no rational claim in this regard. In fact, the forbearance of discipline is the opposite of an adverse employment action. Regardless, a fair reading of the Complaint reveals the actual basis of Plaintiff's gripe: that he was ***terminated*** without prior progressive discipline or "performance management." Obviously, this claim is subsumed within Plaintiff's claims based on the termination of his employment. (Complaint ¶ 80) ("ConEd had a progressive discipline policy that it failed to follow when it fired Mr. Limauro without first subjecting him to any progressive discipline"). The lack of "progressive discipline/performance management," by itself, is not an adverse employment action.

### 2. The Complaint fails to allege facts to establish that Plaintiff was otherwise qualified to perform the essential functions of his job.

Plaintiff's discrimination claims based on the termination of his employment (or any of the other alleged adverse employment actions) should be dismissed because the Complaint fails to allege facts sufficient to render plausible the third element of a *prima facie* case – that Plaintiff was otherwise qualified to perform the essential functions of the job. "'The term "qualified," with respect to an individual with a disability, means that the individual satisfies the requisite skill, experience, education and other job-related requirements of the employment position such individual holds or desires and, with or without reasonable accommodation, can perform the essential functions of such position.'" *Vitti*, 758 Fed. App'x at 157 (quoting 29 CFR 1630.2(m)); *see also Parisi v. Coca-Cola Bottling Co. of New York*, 995 F. Supp. 298, 303 (E.D.N.Y. 1998) ("the notion of 'otherwise qualified' is inextricably linked to the meanings of both 'essential functions' and 'reasonable accommodation'"), *aff'd*, 172 F.3d 38 (2nd Cir. 1999). To survive a motion to dismiss, Plaintiff must allege facts to establish that, despite his disabilities, he was physically and mentally able to satisfy Con Edison's performance standards for the essential

functions of the Construction Supervisor position. *See*, *e.g.*, *Guardino v. Vill. of Scarsdale Police Dep't*, 815 F. Supp. 2d 643, 648 (S.D.N.Y. 2011); *see also Katz v. Metro. Life Ins. Co.*, 1998 WL 132945, *3 (S.D.N.Y. Mar. 20, 1998) (employee whose disabilities prevent him from meeting employer's performance standards "cannot be considered 'otherwise qualified'").

Fundamentally, the Complaint fails to satisfy the pleading standards because it fails to identify or describe the essential functions of Plaintiff's job as a Construction Supervisor. *See Smith v. Town of Ramapo*, 2017 WL 2983027, *2 (S.D.N.Y. Jul. 12, 2017) (plaintiff failed to adequately allege that he was "otherwise qualified" where complaint failed to set forth the essential functions of his job); *Moran v. Wegmans Food Markets, Inc.*, 65 F. Supp. 3d 327, 330 (W.D.N.Y. 2014) (plaintiff "failed to plausibly allege that he was qualified to perform the essential functions of his position . . . . Indeed, Moran does not even set forth any of the essential functions of his position"); *see also Dimps v. Taconic Corr. Facility*, 2019 WL 1299844, *6 (S.D.N.Y. Mar. 20, 2019) (dismissing ADA claim where complaint failed to identify facts about plaintiff's position), *aff'd in relevant part*, 802 Fed. App'x 601 (2nd Cir. 2020).

The Complaint's bald conclusions that Plaintiff "was a qualified employee and was capable of performing the essential functions of his job" (Complaint ¶¶ 94, 119, 142), without stating what those essential functions were or describing how he was qualified to perform those essential functions with his disabilities, plainly fail to satisfy the pleading standards. *Iqbal*, 556 U.S. at 678; *Palma v. Cty. of Stanislaus*, 2017 WL 6513282, *5 (E.D. Cal. Dec. 20, 2017) (boilerplate recitation of elements of an ADA claim, "unaccompanied by facts that meaningfully describe the position's essential functions," failed to satisfy *Iqbal/Twombly* standards).

Not only does the Complaint here fail to "nudge[] [Plaintiff's] claims across the line from conceivable to plausible," *Twombly*, 550 U.S. at 570, it fails to reach even the "conceivable" level with respect to Plaintiff's ability to perform his essential job functions, given the limitations

caused by his disabilities. It is inconceivable how someone who is substantially limited in the ability to interact with others, care for himself, or walk (Complaint ¶¶ 14-16), could possibly perform the job of a Construction Supervisor at a Con Edison power plant. *Cf.*, *Jacques v. DiMarzio, Inc.*, 386 F.3d 192, 203 (2nd Cir. 2004) ("a plaintiff is 'substantially limited' in 'interacting with others' when the mental or physical impairment severely limits the fundamental ability to communicate with others . . . , *i.e.*, to initiate contact with other people and respond to them, or to go among other people – at the most basic level of these activities"). As a matter of law and common sense, interacting with others is an essential function of most jobs, *see Mayo v. PCC Structurals, Inc.*, 795 F.3d 941, 944 (9th Cir. 2015), and certainly an essential function of a supervisory position. *Pabon v. New York City Transit Auth.*, 703 F. Supp. 2d 188, 196 (E.D.N.Y. 2010) (supervisor position "clearly required extensive communication and interpersonal skills in interacting with subordinates [and] supervisors"). Given this presumptive, irreconcilable conflict between Plaintiff's limitations and the likely requirements of his job, he cannot avoid dismissal by omitting from the Complaint any mention of his essential job functions, or any explanation of how an accommodation might have allowed him to perform those essential functions.

Moreover, at the time of Plaintiff's discharge he was subject to medical restrictions that prevented him from walking, standing, or climbing for more than three to six hours per day (Complaint ¶ 50), but nothing in the Complaint addresses the extent to which Plaintiff's job required walking, standing, or climbing. Rather, the Complaint merely concludes, with no supporting allegations of fact, that these restrictions did not prevent Plaintiff from performing the (unstated) essential functions of his job. (*Id.* ¶¶ 51-53). Without identifying the essential functions of the job, the Complaint provides no clue as to how this could possibly be so. *Cf.*, *Palma*, 2017 WL 6513282, at *5 (simply alleging that plaintiff could perform essential functions of the job, with no meaningful explanation of how, "offer[ed] no more than 'labels and

9

conclusions,'" insufficient to avoid dismissal); *Guardino*, 815 F. Supp. 2d at 648 (school crossing guard on medication that required him to leave his post frequently, failed to allege how he could perform job that required him to remain at his post while on duty).

The Complaint also fails to plausibly allege that Plaintiff was qualified to satisfy Con Edison's basic performance standards for the Construction Supervisor position. The fact that he managed to hold the job for 15 months does not suffice. *Dominelli v. N. Country Acad.*, 2016 WL 6833992, *3 (N.D.N.Y. Nov. 18, 2016) (fact that plaintiff held job for a period of time without being terminated, held insufficient to allow inference that she could perform the essential functions of the job, where plaintiff failed to allege that she ever received any positive feedback about her job performance); *Tilley v. ADM Sec. Investigations*, 2008 WL 795313, *3 (E.D.N.Y. Mar. 24, 2008) (dismissing discrimination claims where plaintiff failed to "describe with any level of specificity her job qualifications or performance"); *Pimentel v. City of New York*, 2001 WL 1579553, *4 (S.D.N.Y. Dec. 11, 2001) ("Because plaintiff has failed to allege any facts to support even an inference that she was performing her Supervisor I duties adequately, she has failed to establish that she was 'qualified' for her position"). The Complaint here simply concludes, with no supporting facts: "At all relevant times, Mr. Limauro was a qualified employee and his job performance was satisfactory." (Complaint ¶ 13). The Complaint does not allege that he ever received any positive feedback about his performance. To the contrary, it alleges that he never received any "***formal*** counseling" about his poor performance (*id.* ¶¶ 72-73) (emphasis added), implying that he received informal counseling about his poor performance.

**B.**      **The Complaint fails to allege facts to establish a reasonable accommodation claim.**

A *prima facie* reasonable accommodation claim under the ADA requires showing that "(1) plaintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, plaintiff

could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." *McBride v. BIC Consumer Prod. Mfg. Co.*, 583 F.3d 92, 96-97 (2nd Cir. 2009) (internal quotations and alteration omitted). To survive a motion to dismiss, the plaintiff must allege facts sufficient to render plausible each element of the *prima facie* case. *See*, *e.g.*, *Harvin v. Manhattan & Bronx Surface Transit Operating Auth.*, 767 Fed. App'x 123, 126 (2nd Cir. 2019); *Miller v. Mchugh*, 2016 WL 698147, *5 (S.D.N.Y. Feb. 19, 2016) (plaintiff is required at the pleading stage to allege facts to support a plausible inference that employer failed to provide a sufficient or effective accommodation). Con Edison moves to dismiss on grounds the Complaint fails to allege facts sufficient to establish the third and fourth elements.

A reasonable accommodation ***enables*** a disabled employee to perform the essential functions of the job, and must be both ***effective*** and ***necessary***. *Noll v. Int'l Bus. Machines Corp.*, 787 F.3d 89, 94-97 (2nd Cir. 2015); *Zabar v. New York City Dep't of Educ.*, 2020 WL 2423450, *5 (S.D.N.Y. May 12, 2020) (complaint must explain how the requested accommodation would allow plaintiff to perform the essential functions of her job); *Flynn v. McCabe & Mack LLP*, 2018 WL 794631, *8 (S.D.N.Y. Feb. 8, 2018) (dismissing claim because plaintiff failed to establish that the "requested accommodation was necessary to performing the essential functions of her job"), *appeal withdrawn*, 2018 WL 4348054 (2nd Cir. Jul. 13, 2018). An employee who can perform the essential functions of the job without accommodation has no legal right to an accommodation. *Anderson v. Nat'l Grid, PLC*, 93 F. Supp. 3d 120, 139 (E.D.N.Y. 2015). If the employee needs a reasonable accommodation, the employer need not provide the accommodation the employee prefers – only a reasonable accommodation. *Noll*, 787 F.3d at 95; *see also Hazelwood v. Highland Hosp.*, 763 Fed. App'x 60, 62 (2nd Cir. 2019).

The Complaint identifies three accommodations that Plaintiff allegedly sought: (1) leaving work one hour early on Tuesdays to see a therapist (Complaint ¶¶ 21, 83, 145); (2) a

temporary leave of absence (*id.* ¶¶ 43, 83, 145); and (3) "honoring" his medical restrictions (*id.* ¶¶ 53, 145) – but fails to allege facts to support a valid claim with respect to any of these three.

### 1. Leaving work one hour early on Tuesdays to see a therapist

#### a. The Complaint fails to state a claim.

Plaintiff fails to state a claim from being allegedly denied in his request to leave work one hour early on Tuesdays to see a therapist, because he alleges no facts to suggest that this accommodation was needed to allow him to perform the essential functions of the job. Rather, all reasonable inferences indicate that leaving work one hour early (at 2:30 pm), instead of one-half hour early (3:00 pm) – as was granted by Con Edison (Complaint ¶¶ 21, 23, 30) – was nothing more than a personal preference, which Con Edison had no obligation to accommodate. *See Flynn*, 2018 WL 794631, at *8 (employee's request to leave work early did not support reasonable accommodation claim because employer's denial of the request did not render employee unable to perform essential job functions). Plaintiff alleges that staying until 3:00 pm made him "often late to his appointments and on a few occasions [he] missed his appointments" (Complaint ¶ 25), but does not allege any negative impact on his ability to do his job. In fact, by all reasonable inferences, the therapy sessions he attended alleviated the "more frequent flareups of PTSD and major depressive disorder symptoms" that Plaintiff began to experience in September 2018 (*id.* ¶ 17), as the Complaint does not allege that these symptoms remained or worsened at any point after he began treatment. The Complaint merely contends that the accommodation granted was "less effective" than the accommodation requested (*id.* ¶ 24), which seals the claim's fate because an employer need not provide the most effective accommodation – only an effective (and reasonable) accommodation. *Noll*, 787 F.3d at 96 ("the law requires an effective accommodation, not the one that is most effective for each employee").

     b.  <u>The claim is barred by the statute of limitations.</u>

The claim is also time barred because the accommodation request was allegedly denied in September 2018, more than 300 days before Plaintiff filed his EEOC Charge (in October 2019) (Complaint ¶¶ 20-24, 86). *Ross v. New York*, 2017 WL 354178, *2 (S.D.N.Y. Jan. 24, 2017).

### 2. Temporary leave of absence

The Complaint characterizes this alleged accommodation request as for both the leave of absence itself (Complaint ¶¶ 43, 83), and Plaintiff's being "returned to his job after returning from . . . leave" (*id.* ¶¶ 99, 124) – neither of which supports a valid claim. On the former, Con Edison granted Plaintiff's request for a leave of absence. (*Id.* ¶¶ 45-48). On the latter, as explained *supra*, Plaintiff was in fact returned to his job after returning from leave. He still had the same position as before, and the Complaint makes no allegations to suggest otherwise.

### 3. "Honoring" the medical restrictions imposed by Con Edison

The Complaint's allegations conclusively negate Plaintiff's claims on this point. He contends that Con Edison somehow failed to "honor" his medical restrictions – no walking, standing, or climbing for more than three to six hours per day – by his supervisor's assigning him "to focus on his yearly training certifications, which involved online classes." (Complaint ¶¶ 50, 53, 57). But Plaintiff does not allege that this assignment required him to walk, stand, or climb for more than three to six hours per day. In fact, Janusz believed these restrictions prevented Plaintiff from performing essential functions of his job (*id.* ¶ 53) and, by all reasonable inferences, assigned Plaintiff this training work for the very purpose of accommodating the restrictions. *D'Amico v. City of New York*, 132 F.3d 145, 151 (2nd Cir.) ("A court must give considerable deference to an employer's judgment regarding what functions are essential for service in a particular position"), *cert. denied*, 524 U.S. 911 (1998). Plaintiff's disagreement with this temporary assignment provides no basis for a reasonable accommodation claim. *Cf.*, *Farina*

*v. Cty. of Orange*, 2018 WL 10704514, *7 (S.D.N.Y. Jun. 27, 2018) (providing temporary, light-duty work to employee returning from medical leave satisfied employer's obligation to provide reasonable accommodation).

**C.     The Complaint fails to allege facts to establish a hostile work environment.**

Plaintiff's hostile work environment claim, which is based on nothing more than the single drug test (Complaint ¶ 65), is utterly frivolous. *See Dollinger v. New York State Ins. Fund*, 726 Fed. App'x 828, 831 (2nd Cir. 2018) (hostile work environment claim based on a single communication, failed to allege "facts showing that the discriminatory treatment at issue was sufficiently severe or pervasive to alter the conditions of [plaintiff's] employment and create an abusive working environment and that the hostility occurred because of the protected . . . disability") (internal quotations and alteration omitted); *Locorriere v. NBTY, Inc.*, 2016 WL 625618, *11 (E.D.N.Y. Feb. 17, 2016) (dismissing hostile work environment claims based on a drug test following return from medical leave, along with various other allegedly hostile acts).

**D.     The Complaint fails to state a claim under the NYSHRL.**

Plaintiff's disparate treatment, reasonable accommodation, and hostile work environment claims under the NYSHRL should be dismissed, as against all defendants, for the same reasons argued above because the applicable legal standards are the same as under the ADA. *Fox v. Costco Wholesale Corp.*, 918 F.3d 65, 76 (2nd Cir. 2019); *Langella v. Mahopac Cent. Sch. Dist.*, 2020 WL 2836760, *17 (S.D.N.Y. May 31, 2020) ("It is well established that claims for discrimination, retaliation, and a hostile work environment under the NYSHRL are analyzed under the same legal framework as its federal counterparts"); *McKenzie v. Meridian Capital Grp., LLC*, 35 A.D.3d 676, 677 (2nd Dep't 2006) (affirming dismissal of disability discrimination claims where "plaintiff failed to set forth in her complaint factual allegations sufficient to show

that, upon the provision of reasonable accommodations, she could perform the essential functions of her job. She offered instead only conclusory assertions without factual support").

**E.**     **The Complaint fails to state a claim under the NYCHRL.**

The Complaint is also fatally deficient, as against all defendants, under the NYCHRL.

The disparate treatment claims should be dismissed because, as argued above, the Complaint fails to allege facts to establish that Plaintiff was qualified to perform the essential functions of his job. *See Gonzalez v. City of New York*, 377 F. Supp. 3d 273, 301 (S.D.N.Y. 2019) (*prima facie* case of disability discrimination under NYCHRL requires showing that plaintiff was qualified to perform essential functions of the job); *Mobley v. Madison Square Garden LP*, 2012 WL 2339270, *3 (S.D.N.Y. Jun. 14, 2012) (dismissing NYCHRL claims because complaint failed to adequately allege that plaintiff could satisfactorily perform the job).

The reasonable accommodation claims should be dismissed because the Complaint fails to plausibly allege that Plaintiff needed an accommodation beyond those he was provided. *See Simon v. City of New York*, 2019 WL 916767, *8 (S.D.N.Y. Feb. 14, 2019) (NYCHRL requires plaintiff to demonstrate "that the accommodation requested would actually allow plaintiff to perform . . . the essential functions of the job") (internal quotation omitted). As argued above, Plaintiff was not denied a reasonable accommodation – he was allowed to leave work early on Tuesdays to see a therapist, his request for a leave of absence was granted, he was restored to his regular job after returning from leave, and his medical restrictions were honored.

The hostile work environment claims should be dismissed because they fail to satisfy even the "more liberal" standards of the NYCHRL. *See*, *e.g.*, *Zick v. Waterfront Comm'n of New York Harbor*, 2012 WL 4785703, *8 (S.D.N.Y. Oct. 4, 2012) (dismissing hostile work environment-based claim under NYCHRL because plaintiff failed to allege mistreatment because of her disability); *see also Williams v. New York City Hous. Auth.*, 61 A.D.3d 62, 79-81 (1st

Dep't 2009) (courts may dismiss "truly insubstantial cases" under NYCHRL). Plaintiff's claims are "truly insubstantial," *id.* at 80, and entirely untethered to his disabilities. His allegation that he was "targeted," under the pretext of a random drug test (Complaint ¶¶ 60-66), is conclusory, made "upon information and belief," and unsupported by any allegations allowing an inference of disability discrimination. *Cf.*, *White v. Bridge Inc.*, 2019 WL 4805896, *4 (S.D.N.Y. Sep. 30, 2019) (dismissing NYCHRL claims alleging mistreatment after returning from disability leave, as conclusory and unsupported by facts that could plausibly allow an inference of improper motivation); *Gonzalez*, 377 F. Supp. 3d at 301-02 (dismissing NYCHRL claims where plaintiff failed to allege facts to support inference that he was treated less well because of his disability).

**F.    The Complaint fails to state a claim against McPherson or Barrett.**

In addition to the reasons set forth above, the reasonable accommodation and hostile work environment claims against McPherson and Barrett, and the disparate treatment claims based on actions other than the termination, should be dismissed because the Complaint fails to allege that these individuals had anything to do with the actions forming the basis of Plaintiff's claims. *Gachette v. Metro N.-High Bridge*, 722 Fed. App'x 17, 20-21 (2nd Cir. 2018) (to establish individual liability under NYSHRL and NYCHRL, "a plaintiff must demonstrate some affirmative link to causally connect the actor with the discriminatory action") (internal quotations omitted); *James v. John Jay Coll.*, 2020 WL 1911211, *7 n.16 (S.D.N.Y. Apr. 20, 2020) ("the NYSHRL and the NYCHRL provide for individual liability only for those personally involved in discrimination"). The Complaint purports to implicate McPherson and Barrett only in Plaintiff's discharge, and alleges no facts to suggest that either had any involvement with Plaintiff's request to leave early on Tuesdays, his leave of absence, the drug test, or the training assignment.

Plaintiff's discrimination claims against McPherson and Barrett based on the termination should be dismissed on the additional grounds that the Complaint fails to plausibly allege that

either defendant had knowledge of Plaintiff's disabilities, or regarded him as disabled, at the time of the termination decision. On this point, Plaintiff's allegations are wholly conclusory, based "upon information and belief" and the patently toothless contention that "Mr. Limauro disclosed his disabilities to the Company, Janusz, Barrett, and McPherson . . . and/or the Defendants were aware of Mr. Limauro's disabilities; and/or the Defendants regarded Mr. Limauro as disabled." (Complaint ¶¶ 84-85, 95). *See*, *e.g.*, *Griffin v. Brighton Dental Grp.*, 2013 WL 1221915, *4 (W.D.N.Y. Mar. 25, 2013) (notwithstanding conclusory allegation that plaintiff disclosed her disability to defendants, complaint failed to allege facts to state a plausible claim that defendants knew of her disability); *Scalercio-Isenberg v. Morgan Stanley Servs. Grp. Inc.*, 2019 WL 6916099, *6 (S.D.N.Y. Dec. 19, 2019) (plaintiff's conclusory allegations failed to plausibly allege that employer had knowledge of her disability at time of adverse action); *cf.*, *Ivankovskaya v. Metro. Transportation Auth. Bus Co.*, 2017 WL 3328166, *3 n.5 (E.D.N.Y. Aug. 3, 2017) (single, conclusory allegation that supervisor had knowledge of plaintiff's disability failed to plausibly support claim that defendant regarded her as having a disability).

## POINT II

### THE COMPLAINT FAILS TO STATE A CLAIM UNDER FMLA.

Plaintiff's FMLA claims – that he was denied reinstatement and terminated in violation of the statute, 29 U.S.C. § 2615(a), denied intermittent leave for one-half hour on Tuesdays beginning in November 2018, and drug tested and denied "progressive discipline/performance management" in retaliation for exercising his FMLA rights (Complaint ¶¶ 167-169) – should be dismissed for failure to state a claim upon which relief can be granted.

FMLA claims generally fall under one of two categories – interference or retaliation. An interference claim requires the plaintiff to establish "(1) that she is an eligible employee under the FMLA; (2) that the defendant is an employer as defined by the FMLA; (3) that she was

entitled to take leave under the FMLA; (4) that she gave notice to the defendant of her intention

to take leave; and (5) that she was denied benefits to which she was entitled under the FMLA."

*Graziadio v. Culinary Inst. of Am.*, 817 F.3d 415, 424 (2nd Cir. 2016). Additionally, the Second

Circuit requires a showing of prejudice. *Roberts v. Health Ass'n*, 308 Fed. App'x 568, 569-70

(2nd Cir. 2009). A retaliation claim requires the plaintiff to establish that "(1) he exercised rights

protected under the FMLA; (2) he was qualified for his position; (3) he suffered an adverse

employment action; and (4) the adverse employment action occurred under circumstances giving

rise to an inference of retaliatory intent." *Graziadio*, 817 F.3d at 429.

## A.   Termination and alleged denial of reinstatement

Plaintiff's claims based on the termination of his employment and alleged denial of

reinstatement fail because he was granted the FMLA leave to which he was entitled and restored

to his regular job upon returning from leave, and he has failed to allege facts to establish that he

was qualified for his position at the time of his restoration or termination.

### 1.   Interference

The Complaint concedes that Con Edison granted Plaintiff the ten weeks of FMLA leave

he requested, and does not allege he was entitled to any further FMLA leave at the time of his

discharge on May 31, 2019. (Complaint ¶¶ 45-48, 165). *Cf.*, *Sarno v. Douglas Elliman-Gibbons

& Ives, Inc.*, 183 F.3d 155, 161-62 (2nd Cir. 1999) (affirming dismissal of interference claim

where employee was provided the FMLA leave to which he was entitled).

Plaintiff's claims based on the alleged denial of reinstatement "to the same or equivalent

position" (Complaint ¶ 168) fail for two reasons: (1) he was in fact reinstated to the same

position; and (2) he fails to plausibly allege that he was able to perform the essential functions of

his job, as necessary to establish a denial of restoration claim under FMLA. *See Sarno*, 183 F.3d

at 161 (no infringement of restoration rights where plaintiff was unable to perform the essential

18

functions of his job when FMLA leave ended); *Geromanos v. Columbia Univ.*, 322 F. Supp. 2d 420, 429 (S.D.N.Y. 2004) ("plaintiff was not entitled to reinstatement at the conclusion of her leave because she was unable to perform the essential duties of her employment").

More fundamentally, FMLA imposes no obligation on employers to accommodate an employee whose serious health condition prevents him from performing the essential functions of his job upon returning from leave. *See* 29 CFR § 825.216(c) (distinguishing ADA, which requires reasonable accommodation, from FMLA, which does not); *Macfarlan v. Ivy Hill SNF, LLC*, 675 F.3d 266, 271-72 (3rd Cir. 2012) ("In order for an employee to demonstrate entitlement to restoration, the employee must have been able to perform the essential functions of the job without accommodation at the time he sought restoration") (internal quotations omitted). Here, the Complaint does not allege that Plaintiff was able to perform the essential functions of his job without accommodation at the time of his reinstatement or discharge. (Complaint ¶¶ 48-52).

Additionally, the Complaint, by failing to allege that Plaintiff was ever able to perform the essential functions of his job without accommodation after returning from FMLA leave, fails to allege facts to support a plausible claim of prejudice. *Cf.*, *Roberts*, 308 Fed. App'x at 569-70 (employee not prejudiced by her discharge before expiration of FMLA leave, where her doctor opined that she would be unable to work until a time after the end of 12-week leave entitlement).

### 2. Retaliation

Similarly, Plaintiff's inability to perform the essential functions of his job without accommodation – at the time of his reinstatement, discharge, or at any time thereafter – means he was not "qualified for his position," *Graziadio*, 817 F.3d at 429, and thus, cannot state a FMLA retaliation claim based on the discharge or alleged denial of reinstatement. *See*, *e.g.*, *Geromanos*, 322 F. Supp. 2d at 433-34 (plaintiff was not qualified for her position because she was unable to perform the essential functions of the job for almost two months after her termination and

FMLA-leave expiration); *Turner v. Eastconn Reg'l Educ. Serv. Ctr.*, 2013 WL 6230092, *17 (D. Conn. Dec. 2, 2013) ("The relevant time for determining whether a plaintiff is 'qualified' is the date of the allegedly adverse employment action") (internal quotations omitted), *aff'd*, 588 Fed. App'x 41 (2nd Cir. 2014). The Complaint here does not allege that Plaintiff was ever able to perform the essential functions of his job without accommodation at any time after March 2019.

**B.      Alleged denial of "intermittent leave" for a half-hour on Tuesdays**

The Complaint fails to plausibly allege that Plaintiff was denied "intermittent leave" under FMLA, from being denied his preference to leave work an hour early on Tuesdays. Plaintiff made this request in September 2018 – two months before becoming FMLA eligible. (Complaint ¶¶ 20-21, 27). *Cruz v. Wyckoff Heights Med. Ctr.*, 2016 WL 5339540, *9 (S.D.N.Y. Sep. 23, 2016) (dismissing interference claim where plaintiff was ineligible for FMLA coverage at the time of leave request). Plaintiff's vague allegations that he "periodically renewed his request to leave early to see his therapist" (Complaint ¶ 26), and Con Edison denied "his repeated requests for intermittent leave" (*id.* ¶ 167), fail to plausibly allege that he ever informed Con Edison that his preference to leave work at 2:30 pm on Tuesdays amounted to a request for intermittent FMLA leave. *See Rivera v. Crowell & Moring L.L.P.*, 2016 WL 796843, **13-14 (S.D.N.Y. Feb. 18, 2016); 29 CFR § 825.303(b) (employee must "provide sufficient information for an employer to reasonably determine whether the FMLA may apply to the leave request").

Moreover, the claims against McPherson and Barrett should be dismissed for the additional reason that the Complaint fails to allege that either of these individuals had any involvement in the decision to allow Plaintiff to leave work only a half-hour early on Tuesdays. *See*, *e.g.*, *Sutter v. Dibello*, 2019 WL 4195303, **17-18 (E.D.N.Y. Aug. 12, 2019) (dismissing FMLA claims against individual defendants where complaint failed to allege they played any direct role in the determination of plaintiff's FMLA leave request), *report and recommendation*

*adopted*, 2019 WL 4193431 (E.D.N.Y. Sep. 4, 2019); *Noia v. Orthopedic Assocs. of Long Island*, 93 F. Supp. 3d 13, 17 (E.D.N.Y. 2015) (rejecting FMLA claim against individual, for failure to allege any direct involvement by the individual in the alleged violation).

**C.**     **The drug test and denial of "progressive discipline/performance management"**

The Complaint plainly fails to state a FMLA retaliation claim based on the drug test or alleged denial of "progressive discipline/performance management" – neither of which constitutes an adverse employment action. Although the standard for establishing an adverse employment action is lower for retaliation claims than for discrimination claims, the single drug test upon returning from leave, and the lack of discipline before termination, fail to meet even the lower standard. *See*, *e.g.*, *Frazier v. City of New York Dep't of Correction*, 2016 WL 4444775, *3 (E.D.N.Y. Aug. 23, 2016) ("plaintiff's mere subjection to a single drug test was, at most, an inconvenience that does not rise to the level of an adverse employment action"). The Complaint also fails to allege that McPherson or Barrett had any involvement with the drug test.

## POINT III

### THE COMPLAINT FAILS TO STATE A RETALIATION CLAIM.

The Complaint fails to allege facts to support a plausible retaliation claim – based on alleged disability discrimination – under the ADA, the NYSHRL, or the NYCHRL. "To establish a prima facie case of retaliation under the ADA, a plaintiff must establish that (1) the employee was engaged in an activity protected by the ADA, (2) the employer was aware of that activity, (3) an employment action adverse to the plaintiff occurred, and (4) there existed a causal connection between the protected activity and the adverse employment action." *Sarno*, 183 F.3d at 159. Plaintiff's termination constitutes the only adverse employment action in this case.

As for protected activity, the Complaint identifies (1) Plaintiff's September 2018 request to leave work an hour early on Tuesdays (Complaint ¶¶ 17, 20-23); (2) his March 2019 request

for FMLA leave (*id.* ¶¶ 41-47); (3) his May 29, 2019 conversation with Janusz about the drug test (*id.* ¶¶ 60, 66); and (4) his May 30, 2019 voice-mail messages (*id.* ¶¶ 67-68). However, under the NYSHRL and NYCHRL, requesting an accommodation does not constitute protected activity. *Witchard v. Montefiore Med. Ctr.*, 103 A.D.3d 596, 596 (1st Dep't) ("Under both New York State and New York City Human Rights Laws, a request for reasonable accommodation is not a protected activity for purposes of a retaliation claim"), *lv. denied*, 22 N.Y.3d 854 (2013); *McKenzie*, 35 A.D.3d at 677-78 (plaintiff's "requesting additional leave time to accommodate her disability" was not done "in opposition to a practice forbidden by the State or City Human Rights Laws"); *Sutter*, 2019 WL 4195303, at *22 ("request for FMLA leave does not constitute a protected activity under the NYCHRL").[1]

To the extent Plaintiff's request to leave work one hour early on Tuesdays was protected activity under the ADA, the more than eight months that passed until his discharge is too long to infer causation. *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001) (to establish causation, temporal proximity must be "very close"); *Williams v. Metro-N. Commuter R. Co.*, 2013 WL 4054718, *9 (S.D.N.Y. Aug. 6, 2013) ("for temporal proximity to establish causality, the intervening period must be . . . no more than a couple months, at most"), *app. dismissed*, No. 13-3421 (2nd Cir. Jan. 13, 2014). Nor does the Complaint allege any basis to infer causation.

Plaintiff's March 2019 request for FMLA leave cannot serve as the basis for a retaliation claim for the additional reasons that the request was made more than two and one-half months before Plaintiff's termination (Complaint ¶ 165), the request was granted, and the Complaint contains no allegations whatsoever to suggest any retaliatory animus or causal connection between the request for leave and Plaintiff's eventual discharge. *See Reid v. Time Warner Cable*

---

[1] The NYCHRL was amended, effective November 11, 2019, by Local Law 129, which added "request[ing] a reasonable accommodation under this chapter" to the list of protected acts that can serve as a predicate to a retaliation claim under the statute. NYC Admin. Code § 8-107(7)(v).

*New York City LLC*, 2018 WL 1701932, *7 (E.D.N.Y. Mar. 30, 2018) ("District courts in the Second Circuit have consistently held that a passage of more than two months between the protected activity and the adverse employment action does not allow for an inference of causation") (internal quotations omitted); *Licatesi v. Penauille Servisair*, 2010 WL 11627294, *7 (E.D.N.Y. Mar. 17, 2010) (employer's granting employee's request for accommodation negated any inference that employer intended to retaliate against employee for that same request).

Plaintiff's allegation that he "raised protected concerns" about being "being improperly targeted" for the drug test (Complaint ¶ 66) does not amount to an allegation of protected activity because no reasonable employee in his position would have believed that being drug tested, upon returning to work after an extended leave of absence, was unlawful. In fact, the ubiquity and legality of drug testing employees upon their return from disability-related leaves of absence is well established. For example, the U.S. Department of Transportation's drug-testing rules, which are based on the Department of Health and Human Services' Mandatory Guidelines for Federal Workplace Drug Testing Programs, 54 Fed. Reg. 49854, 49854 (Dec. 1, 1989) (Final Rule), allow that when an employee on leave of absence is selected for a random drug test the employer may "set the driver's name aside until the driver comes back from the extended leave and the employer would conduct the test at that time." 59 Fed. Reg. 7484, 7498-99 (Feb. 15, 1994) (Final Rule). Additionally, the EEOC recognizes the legality of subjecting employees to return-to-work medical examinations, which may include drug tests, to determine the employee's ability to perform the essential functions of the job. EEOC Enforcement Guidance: Disability-Related Inquiries and Medical Examinations of Employees Under the ADA, 2000 WL 33407181, **3-4, 13-14 (Jul. 27, 2000). The U.S. Department of Labor has opined that "[n]othing in the FMLA prohibits an employer from requiring an employee to submit to drug testing once the employee has returned to work." DOL Opinion Letter, 2004 WL 5573805, *1 (Oct. 25, 2004). Moreover,

23

Plaintiff's allegation that he was "targeted" for the test is made "upon information and belief," unsupported by any allegations of fact to render such a belief reasonable. (Complaint ¶ 61).

The retaliation claims based on Plaintiff's alleged voice-mail messages to Janusz should be dismissed because the Complaint pleads no facts to suggest that Janusz, McPherson, Barrett, or any Con Edison decision maker ever heard these messages or was aware of their content. (Complaint ¶ 68). *Cf.*, *Stern v. State Univ. of New York*, 2018 WL 4863588, *18 (E.D.N.Y. Sep. 30, 2018) (rejecting allegation based "on information and belief" that defendant had knowledge of protected activity, where unaccompanied by any factual information to render the belief plausible). As for content, Plaintiff's vague allegation – that the voice-mail messages "expressed further protected concerns about the improper way he was being treated and targeted upon his return to work" (Complaint ¶ 68) – plainly fails to satisfy the pleading standards. *See*, *e.g.*, *Colas v. City Univ. of New York*, 2019 WL 2028701, *8 (E.D.N.Y. May 7, 2019). Moreover, Plaintiff obviously left these messages ***after*** the decision had been made to terminate his employment.

## POINT IV

### THE COMPLAINT FAILS TO STATE A CLAIM UNDER THE NYLL.

Plaintiff's claims for overtime compensation under the NYLL should be dismissed because he fails to plead with sufficient particularity under the standards set by the Second Circuit in *Dejesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85 (2nd Cir. 2013), *cert. denied*, 571 U.S. 1128 (2014), *Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192 (2nd Cir. 2013), and *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106 (2nd Cir. 2013). These cases stand for the proposition that claims for unpaid overtime must be pled with enough specificity to make it plausible that the plaintiff worked more than 40 hours in a particular workweek and was not paid overtime in accordance with law. *E.g.*, *Nakahata*, 723 F.3d at 201 ("To plead a plausible FLSA overtime claim, Plaintiffs must provide sufficient detail about the

length and frequency of their unpaid work to support a reasonable inference that they worked more than forty hours in a given week"). Claims simply alleging that the plaintiff "worked more than 'forty hours' a week without being paid '1.5' times her rate of compensation," without stating or estimating the number of hours worked in any specific workweek, will fail to meet the Second Circuit's standards. *Dejesus*, 726 F.3d at 89 (affirming dismissal where "complaint was devoid of any numbers to consider beyond those plucked from the statute").

The Complaint's conclusory allegations – that Plaintiff "routinely" worked more than 40 hours "every week" and was not compensated at time and one-half for overtime hours (Complaint ¶¶ 30, 32, 220) – place it squarely in the category of cases rejected by the Courts as failing to satisfy the *Lundy/Nakahata/Dejesus* standards. *See*, *e.g.*, *Silverstein v. Massapequa Union Free Sch. Dist.*, 2019 WL 4888673, *4 (E.D.N.Y. Sep. 30, 2019) (dismissing FLSA claim alleging that "plaintiff has 'consistently worked over forty (40) hour work weeks,' but has 'not received any overtime pay'"); *Cabrera v. CBS Corp.*, 2018 WL 1225260, *9 (S.D.N.Y. Feb. 26, 2018) (rejecting, as "threadbare recitations," allegations that plaintiffs "regularly worked well in excess of 50-60 hours a week . . . without any overtime compensation").

## <u>CONCLUSION</u>

For the reasons set forth above, the Complaint should be dismissed in its entirety with prejudice, and Defendants Con Edison, Christopher Janusz, and Conroy McPherson awarded such other and further relief as the Court deems just and proper.

Dated: July 13, 2020            CHRISTOPHER A. D'ANGELO
       New York, New York         Attorney for Defendants Con Edison, Christopher
                                      Janusz, and Conroy McPherson

                                      Of Counsel:
                                      By:  <u>/s/ Paul Limmiatis</u>
                                                    4 Irving Place, 18th Floor
                                                    New York, New York 10003
                                                    limmiatisp@coned.com
                                                    212-460-2571