**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
————————————————————————

JOSEPH LIMAURO,

                Plaintiff,

    -against-

                                    No. 20-cv-03558 (CM)

CONSOLIDATED EDISON COMPANY OF
NEW YORK, INC.; CHRISTOPHER JANUSZ;
THOMAS BARRETT; AND CONROY
MCPHERSON

                Defendants
————————————————————————

### MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

McMahon, C.J.:

    Plaintiff Joseph Limauro claims that he was fired from his job as a construction services supervisor with ConEd because of his various physical and mental disabilities. Limauro now sues his former employer, alleging eight different causes of action arising under the Americans with Disabilities Act ("ADA"), the New York State Human Rights Law ("NYSHRL"), the New York City Human Rights Law ("NYCHRL"), the Family Medical Leave Act ("FMLA"), and the New York State Labor Law ("NYLL").

    ConEd and the associated individual Defendants have filed a motion to dismiss the complaint as to all counts for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6). As to each count except Count VIII, which seeks damages for failure to pay overtime wages, the motion is DENIED. As to Count VIII, the motion is GRANTED, with leave to amend to cure the patent deficiency in the pleading.

1

## I.    BACKGROUND

### A.  The Parties

Joseph Limauro is a resident of Connecticut. ConEd hired Limauro to work as a construction services supervisor in New York City on November 1, 2017.  Limauro worked at ConEd until he was fired on May 31, 2019. (Complaint at ¶¶ 9, 70).

Defendant Consolidated Edison Company of New York ("ConEd") is a corporation incorporated and headquartered in New York.

Defendants Christopher Janusz, Thomas Barrett, and Conroy McPherson were ConEd employees during the events pertaining to this suit. Janusz worked as a construction services manager and was Limauro's immediate supervisor. (*Id*. at ¶¶ 3, 18). Barrett worked as a construction services operations manager, and McPherson was a human resources representative. Limauro's complaint claims that Barrett and McPherson were the ConEd representatives who fired Limauro and were thus complicit in that decision. (*Id*. at ¶¶ 67, 70).

### B.  Plaintiff's Allegations

On a motion to dismiss, the Court must "accept all factual allegations in the complaint as true and draw all reasonable inferences in the [plaintiff's] favor." *Dooley v. JetBlue Airways Corp.*, 636 F. App'x 16, 18 (2d Cir. 2015) (quoting *Deutsche Bank Nat. Trust Co. v. Quicken Loans Inc.*, 810 F. 3d 861, 863 n.1 (2d Cir. 2015)). Thus, the following facts are recounted from Limauro's complaint.

1.   <u>Limauro's Disabilities</u>

Limauro suffers from post-traumatic stress disorder ("PTSD") and major depressive disorder. (*Id*. at ¶¶ 14–15). These mental-health ailments substantially affect his day-to-day life – for instance, by making it difficult for him to get consistent sleep, be happy, or to socialize

regularly. Limauro also suffers from several physical ailments, namely gout and osteoarthritis. These conditions cause him great pain, and limit his ability to run, walk, or stand for long periods of time. (*Id*. at ¶ 16). Despite these limitations, ConEd hired Limauro to serve as a construction services supervisor on November 1, 2017. (*Id*. at ¶ 9). Throughout his employment, Limauro was able to perform his job, and he was never subjected to any discipline, counseling or even given any warnings regarding his job performance. (*Id*. at ¶¶ 9, 72–74)

### 2. Limauro's Allegations Regarding his Mental Health

In September 2018, Limauro's symptoms relating to his PTSD and major depressive disorder worsened, and he began regularly seeing a therapist. (*Id*. at ¶ 17). Limauro discussed his mental-health issues with Janusz, his immediate supervisor, and asked for permission to leave work one hour earlier each Tuesday – he normally worked from 7 AM to 3:30 PM – so that he could arrive at his therapist's office in time for his appointments. (*Id*. at ¶ 21).

Janusz was reluctant to grant the accommodation; he initially suggested that Limauro see his therapist on weekends. Eventually, he agreed to allow Limauro to leave work thirty minutes early each Tuesday. (*Id*. at ¶ 23). Limauro claims that this accommodation was insufficient because it resulted in him being late for his appointments; he actually missed several altogether. (*Id*. at ¶ 25).

Limauro continued to request that he be allowed to leave one hour early for the next several months – all the way through November 2018 – but ConEd denied all of these requests. (*Id*. at ¶ 26).

### 3. Limauro's Allegations Regarding his Physical Health

Beginning in March 2019, Limauro's symptoms relating to his gout and osteoarthritis also worsened, to the point where he was unable to walk more than a few steps at a time. (*Id*. at ¶ 41).

3

Limauro's doctor recommended a period of no physical activity to recover, and so Limauro asked ConEd for medical leave, which he qualified for under the FMLA. (*Id.* at ¶ 43). ConEd granted Limauro's request, and he went on medical leave for a total of ten weeks. (*Id.* at ¶¶ 46, 48).

Limauro returned to work on May 28, 2019. On his first day back, Limauro was sent to see a ConEd doctor to determine his fitness for duty. (*Id.* at ¶ 49). The doctor placed a physical-exertion restriction on Limauro, recommending that he limit his walking, standing, and climbing to between three to six hours per day. (*Id.* at ¶ 50). Limauro presented these recommendations to Janusz and asked for an accommodation to his regular duties. According to Limauro, Janusz became angry; he told Limauro that he could not adequately perform his job with the restrictions in place. (*Id.* at ¶¶ 53–55). Janusz was unwilling to engage in any type of discussion with Limauro about alternative accommodations, and instead instructed Limauro to catch up on his yearly training certifications, which were classes that were conducted online. (*Id.* at ¶¶ 54, 55, 57).

The next day (May 29), ConEd required Limauro to take a "random" drug test at 7 AM, which he passed. According to Limauro, this was not a routine procedure for employees who were returning to work after a period of medical leave. Limauro believes that being required to take the drug test was a form of retaliation, because he had to walk a significant distance to and from the facility where he took the test. (*Id.* at ¶ 65).

At around 2 PM the next day (May 30), Limauro was informed by a co-worker that Barrett – ConEd's construction services operations manager (and Janusz's boss) – wanted to have a meeting with Limauro on May 31 at 9 AM. Limauro became concerned, because Barrett did not normally meet with Limauro as part of his job. Limauro left two voice mails for Janusz, asking why this meeting was taking place and otherwise complaining about how he had been treated since returning to work. (*Id.* at ¶ 68). Janusz never returned the calls.

4

ConEd fired Limauro at the May 31 meeting, just three days after he returned to work from medical leave. (*Id.* at ¶ 70). Present at the meeting with Limauro were Barrett and McPherson. The pair told Limauro that he was being fired because of his poor performance on two projects and for not properly filling out timesheets while he was on leave. (*Id.* at ¶ 71).

Limauro claims that ConEd generally uses a progressive discipline policy that escalates each poor performance before firing, but that it failed to do so before firing him. He also alleges that several non-disabled coworkers did not properly enter their timesheets but were not fired. Instead, Limauro believes that he was fired because of his various disabilities.

    4.  <u>Summary</u>

In sum, Limauro identifies five distinct actions that he asserts qualify as adverse employment actions that ConEd took against him because of his disabilities: (1) ConEd's refusal to permit him to leave work an hour early each week to attend therapy sessions; (2) his "random" drug test the day after he returned to work from medical leave; (3) ConEd's assigning him to complete online training as opposed to his regular work duties; (4) ConEd's refusal to engage in an interactive dialogue regarding his physical restrictions after he returned to work; and (5) his firing, and the denial of a progressive discipline mechanism before his termination.

### C. Procedural History

In October 2019, approximately five months after being fired, Limauro filed a Charge of Discrimination with the New York City Commission on Human Rights ("NYCCHR") and cross filed the charge with the Equal Employment Opportunity Commission ("EEOC"). On April 3, 2020, Limauro requested and received a notice of administrative closure from the NYCCHR. He then received his right-to-sue letter from the EEOC on April 7, 2020. Limauro filed the instant suit against the Defendants on May 7, 2020.

Limauro's complaint alleges the following: violations of the NYCHRL, the NYSHRL, and the ADA based on disability discrimination and failure to accommodate (Counts I, II, and III, respectively); retaliation under the NYCHRL, NYSHRL, and ADA (Counts V, VI, and VII, respectively); interference with – and retaliation for exercising – his rights under the FMLA (Count IV); and a failure to pay overtime, in violation of the NYLL (Count VIII).

Defendants have jointly filed a motion to dismiss all of the claims for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

## II.   DISCUSSION

### A.  Legal Standards

#### 1.  Motion to Dismiss

To survive a motion to dismiss for failure to state a claim, a plaintiff's complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)). Although the complaint must raise more than the "sheer possibility that a defendant has acted unlawfully," it need not contain "detailed factual allegations," *Twombly*, 550 U.S. at 555, as the question "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995) (citation omitted). A motion to dismiss will be denied if the plaintiff's allegations are facially plausible – "when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. In answering this question, a court must accept all of the plaintiff's factual allegations in the complaint as true.

#### 2.  Relationship of the ADA, NYSHRL, and NYCHRL.

Six of Limauro's eight causes of action arise under either the ADA, the NYSHRL, or the NYCHRL. Claims under the NYSHRL and ADA are evaluated under the same legal framework, as "New York State disability discrimination claims are governed by the same legal standards as federal ADA claims." *Rodal v. Anesthesia Grp. Of Onondaga, P.C.*, 369 F.3d 113, 117 n.1 (2d Cir. 2004); *see also Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 212 n.3 (2d Cir. 2001); *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 332 n.1 (2d Cir. 2000).

Analysis under the NYCHRL can be a different matter. For many years, claims arising under the statute were "treated as coextensive with state and federal counterparts." *Loeffler v. Staten Island Univ. Hops.*, 582 F.3d 268, 278 (2d Cir. 2009). That changed in 2005, when the New York City Council amended the NYCHRL to require courts to construe the statute more broadly than similarly worded state or federal laws:

> The provisions of this [ ] title shall be construed liberally for the accomplishment of the uniquely broad and remedial purposes thereof, regardless of whether federal or New York State civil and human rights laws, including those laws with provisions comparably-worded to provisions of this title, have been so construed.

Local Civil Rights Restoration Act of 2005, N.Y.C. Local Law No. 85 (2005).

Courts must now "analyze [the viability of] NYCHRL claims separately and independently from any federal and state law claims." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013). The Second Circuit has interpreted the amended NYCHRL as establishing a "'one-way ratchet,' by which interpretations of state and federal civil rights statutes can serve only 'as a *floor* below which the City's Human Rights law cannot fall.'" *Ibid* (quoting *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 278 (2d Cir. 2009)). This means that "even if the challenged conduct is not actionable under federal and state law, federal courts must consider separately whether it is actionable under the broader New York City standards." *Ibid*. Practically speaking, because the NYCHRL is more protective than its state and federal counterparts, a claim

is automatically stated under the NYCHRL if it is stated under the federal and state statutes – and a claim may be stated under the  NYCHRL even if that same claim would be dismissed under the ADA or the NYSHRL.

      3.  <u>Individual Liability</u>

While all but two of Limauro's claims are brought against all of the defendants, Limauro's ADA discrimination and retaliation claims (Counts III and VII) are alleged only against ConEd. This is because, the "ADA, "which explicitly borrows the remedies set forth in [Title VII], cannot provide for individual liability. *Spiegel v. Schulmann*, 604 F.3d 72, 79 (2d Cir. 2010); *see also, e.g., Salas v. New York City Dep't of Investigation*, 298 F. Supp. 3d 676, 682 (S.D.N.Y. 2018).

However, the state and city statutes underlying the rest of Limauro's claims all provide for individual liability if the individual defendant has substantial control over employment decisions regarding Limauro or is someone who has "the authority to hire and fire employees." *Edwards v. Jericho Union Free Sch. Dist.*, 904 F. Supp. 2d 294, 304 (E.D.N.Y. 2012) (NYSHRL); *see also Feingold v. New York*, 366 F.3d 138, 158 (2d Cir. 2004) (NYCHRL); *Smith v. Westchester Cnty.*, 769 F. Supp. 2d 448, 475 (S.D.N.Y. 2011) (FMLA); *Fermin v. Las Delicias Peruanas Restaurant, Inc.*, 93 F. Supp. 3d 19, 35–36 (E.D.N.Y. 2015) (NYLL). For a theory of individual liability to survive a motion to dismiss, the plaintiff must "plead that the proposed individual defendants had substantial control over the aspects of employment alleged to have been violated." *Smith*, 769 F. Supp. 2d at 475–76 (quoting *Augustine v. AXA Fin., Inc.*, No. 07-cv-8362, 2008 WL 5025017, at *4 (S.D.N.Y. Nov. 24, 2008)).

Here, Limauro has alleged facts that raise an inference that all three of the individual defendants are subject to liability given their positions within ConEd. All three of Janusz, Barrett, and McPherson were above Limauro on ConEd's organizational chart. Barrett (ConEd's

construction services operations manager), and McPherson (a human resources representative) were present at Limauro's firing, and they informed Limauro of ConEd's apparent reasons for firing him. One can thus draw the inference that they were responsible for decisions related to his employment. (*Id*. at ¶¶ 70–71). Similarly, although Janusz was not at the meeting where Limauro was fired, he was Limauro's direct supervisor, had discussions with Limauro regarding his work assignments and determinations, and had authority over his scheduling. (*Id*. at ¶¶ 50–56).

Thus, Limauro has alleged enough facts to raise the possibility of individual liability as to Janusz, Barrett, and McPherson, and the Court will thus analyze all of Limauro's claims against the Defendants' together. Whether those allegations will be buttressed with the evidence needed to survive a motion for summary judgment or a directed verdict is a matter for another day.

### B.  Disability Discrimination Based on Disparate Treatment (Counts I, II, III)

Limauro brings disability-discrimination claims under the NYCHRL (Count I), the NYSHRL (Count II), and the ADA (Count III). For the reasons discussed above, I will see whether the complaint states a disability-discrimination claim under the ADA. If it does, then it necessarily states a claim under both the state statute (which is co-extensive with the ADA) and the city statute (which is more liberal than the ADA).

The ADA provides that "No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). A "qualified individual" is one "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." *Id*. at § 12111(8).

Disability-discrimination claims are analyzed under the familiar framework the Supreme Court established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92, 96 (2d Cir. 2009). Under this framework, a plaintiff can establish a *prima facie* case of discrimination by demonstrating that: (1) the employer is a "covered entity," under the ADA; (2) the plaintiff has a "disability" under the ADA; (3) he "was qualified to perform the essential functions of the job, with or without reasonable accommodation"; and (4) he "suffered an adverse employment action because of his disability or perceived disability." *Kinneary v. City of New York*, 601 F.3d 151, 155–56 (2d Cir. 2010).

Yet, at the motion-to-dismiss stage, a plaintiff need not even allege "specific facts establishing a prima facie case of discrimination under the framework set forth . . . in *McDonnell Douglas*," *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 (2002). All that is needed is "a short and plain statement of the claim showing that the pleader is entitled to relief." *Ibid.* (quoting Fed. R. Civ. P. 8(a)(2)). *Swierkiewicz* was decided before the Supreme Court heightened pleading requirements to "plausibility" in *Iqbal* and *Twombly*, but the Second Circuit has since clarified the interplay of these opinions: "*prima facie* 'is an evidentiary standard, not a pleading requirement,'" and so all that a plaintiff must do is "set forth enough factual allegations to plausibly support each of the . . . basic elements" of a claim under *McDonnell Douglas*. *Mandala v. NTT Data, Inc.*, 975 F.3d 202, 209 (2d Cir. 2020) (quoting *NAACP v. Merrill*, 939 F.3d 470, 477 (2d Cir. 2019)). Fundamentally, this means that at the motion-to-dismiss stage, a court will not dismiss a discrimination claim as long the complaint alleges facts suggesting that the plaintiff was treated "'less well' because of his disability." *Gonzalez v. City of New York*, 377 F. Supp. 3d 273, 301 (S.D.N.Y. 2019) (quoting *Mihalik*, 715 F.3d at 110).

Here, the first two factors of the claim – that ConEd is a covered employer and that Limauro suffers disabilities – are uncontested. The only dispute is whether Limauro was otherwise qualified for his job, and whether he was subjected to an adverse employment action.

    1.   Limauro has sufficiently alleged that he was qualified for the job

The qualification element of a disability-discrimination claim requires only a "minimal showing" that the plaintiff "possesses the basic skills necessary for performance of [the] job." *Owens v. N.Y.C. Hous. Auth.*, 934 F.2d 405, 409 (2d Cir. 1991) (quoting *Powell v. Syracuse Univ.*, 580 F.2d 1150, 1155 (2d Cir. 1978)). Limauro's complaint alleges facts from which one can infer that he was qualified for his job. The complaint claims that ConEd hired Limauro in November 2017; that he was never cited for poor performance; that he never received any formal counseling or discipline; and that he never even received any warnings related to his performance before he was fired in May 2019. (*Id.* at ¶¶ 9, 72–74). The fact that Limauro was hired and performed his job without discipline for almost two years before his firing suggests that he was qualified for the job before he went on medical leave. And while Limauro requested to limit his walking or standing to between three to six hours per day after he returned to work from medical leave, that was a limitation placed on him by *ConEd's doctor*. (*Id.* at ¶¶ 49–51). This suggests that ConEd (or at least its doctor) believed that Limauro could adequately perform his duties with the restrictions in place.

It can thus be inferred from the allegations of the complaint that Limauro was able to perform his job duties while limiting his physical activity. Courts have consistently held that a plaintiff's ability to hold a job for an extended period of time raises the inference that he was qualified for the job. For example, in *Capobianco v. City of New York*, 422 F.3d 47, 61 (2d Cir. 2005), the Second Circuit suggested that a plaintiff being "able to perform [a job] satisfactorily . .

. for some time" raises the inference that he is qualified for the position. *Id*. at 61. And in *Farmer v. Shake Shack Enterprises, LLC*, 473 F. Supp. 3d 309, 325 (S.D.N.Y. 2020), the court held that a plaintiff pled sufficient facts to survive dismissal when she alleged that she had worked at the defendant restaurant for "approximately two months" and had "received a raise during her short tenure." The fact that Limauro was able to perform the job without any reprimand for an extended period of time is enough for the Court to infer that he was qualified for the position.

Defendants claim that Limauro failed to state a claim because he did not describe his "essential job functions" with enough specificity. But there is no such requirement at the motion-to-dismiss stage. Indeed, because courts – at the *summary judgment* stage – give "substantial deference" to "the employer's judgment as to what functions of a job are essential," a plaintiff does not fail to state a claim simply because he does not detail what those functions may be. The determination of what qualifies as an essential job function – and whether Limauro was otherwise qualified to fulfill it – is a question reserved for later proceedings. *McBride*, 583 F.3d at 98. All that Limauro must do in his complaint is to allege facts that raise an inference that he was qualified. He has met this requirement.

2.  Limauro has sufficiently alleged that he was subjected to an adverse action

The last element of a disability-discrimination claim requires that the plaintiff allege facts that suggest his employer took an adverse action against him due to the employee's disability. An adverse employment action is one that is "'materially adverse' with respect to 'the terms and conditions of employment.'" *Davis v. New York City Dep't of Educ.*, 804 F.3d 231, 235 (2d Cir. 2015) (quoting *Sanders v. N.Y.C. Human Res. Admin.*, 361 F.3d 749, 755 (2d Cir. 2004)).

Getting fired certainly qualifies as an adverse employment action. Limauro alleges that he was fired just three days after returning to work from medical leave. (*Id*. at ¶ 70). Not only that,

Limauro claims that he was fired after asking ConEd for a temporary accommodation specifically related to his physical disabilities. The adverse action was taken "very close" to when Limauro returned to work and made his request. Indeed, he had not yet even had the opportunity to try to perform his regular work duties (i.e., had not yet had the time to demonstrate his competency for the job) before he was fired. *Clark Cty Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001). The close temporal proximity between Limauro's returning to work, his request for accommodation, and his firing is sufficient to raise an inference that he was fired because of his disability. *See, e.g., Salas*, 298 F. Supp. at 687.

### C.  Failure to Accommodate (Counts I, II, III)

Limauro also brings claims of failure to accommodate under the same counts as his disability-discrimination claims.

Under the ADA, discriminatory conduct includes, *inter alia*, "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112(b)(5)(A). A plaintiff states a *prima facie* case for failure to accommodate by alleging that:

> (1) plaintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations.

*McMillan v. City of New York*, 711 F.3d 120, 125–26 (2d Cir. 2013) (quoting *McBride.*, 583 F.3d at 97).

Here, ConEd acknowledges that Limauro has sufficiently pled the first two elements of the claim. It contests only that Limauro failed to plead a reasonable accommodation, and that ConEd failed to make such accommodations.

A "reasonable accommodation" generally means, "Modifications or adjustments that enable a covered entity's employee with a disability to enjoy equal benefits and privileges of employment as are enjoyed by its other similarly situated employees without disabilities." 29 C.F.R. § 1630.2 (o) (1) (iii). It may include, "Job restructuring; part-time or modified work schedules; reassignment to a vacant position" or "other similar accommodations." *Id*. at § 1630.2 (o) (2).

The question of what qualifies as a reasonable accommodation is one that is "fact-specific" and "often must be resolved by a factfinder." *Noll v. Int'l Bus. Machines Corp.*, 787 F.3d 89, 94 (2d Cir. 2015) (quoting *Wernick v. Fed. Rsrv. Bank of N.Y.*, 91 F.3d 379, 385 (2d Cir. 1996)). If the plaintiff provides the employer with a request for an accommodation, then the employer will generally raise an affirmative defense by "demonstrat[ing] that such accommodations would present undue hardships and would therefore be unreasonable." *McMillan*, 711 F.3d at 128. This, too, is a fact-intensive inquiry. If an employer denies a plaintiff's initial request for accommodation, "it may be necessary for the covered entity to initiate an informal, interactive process," with the employee, 29 C.F.R. § 1630.2 (o) (3), whereby the two "work together to assess whether an employee's disability can be reasonably accommodated." *Jackan v. N.Y.S. Dep't of Labor*, 205 F.3d 562, 566 (2d Cir. 2000). Whether the employer definitively failed to accommodate a reasonable request will be evaluated in light of the interactive process.

Ultimately, these fact-intensive questions are reserved for later proceedings. "All that plaintiffs must do at the motion to dismiss stage is plead the *existence* of a 'plausible accommodation, the costs of which, facially, do not clearly exceed its benefits.'" *Shaywitz v. Am. Bd. of Psychiatry and Neurology*, 675 F. Supp. 2d 376, 390 (S.D.N.Y. 2009) (citation omitted) (emphasis added). In other words, a plaintiff "bears only the burden of *identifying an*

*accommodation*" which is reasonable. *Novick v. Village of Wappinger Falls, N.Y.*, 376 F. Supp. 3d 318, 337 (S.D.N.Y. 2019) (quoting *Borkowski v. Valley Cent. Sch. Dist.*, 63 F.3d 131, 139 (2d Cir. 1995)) (emphasis added).

Here, Limauro identifies three accommodations that he requested from ConEd: (1) his request to leave an hour early each Tuesday to see his therapist; (2) his request to go on medical leave; and (3) his request to limit his walking and standing to between three to six hours each day after he returned to work. These requests are better grouped into requests to accommodate his mental-health disabilities (leaving work early) and those related to his physical disabilities (medical leave, walking/standing limitation).

    1.  <u>Requests Related to Limauro's Mental-Health Disabilities</u>

Limauro claims that his PTSD and major depressive disorder required him to see a therapist. (*Id.* at ¶ 17). He asked for permission to leave work one hour early each Tuesday so that he could arrive at his therapist's on time. However, ConEd denied the request, and only permitted him to leave a half hour early each Tuesday. This caused Limauro to often be late to his appointments, or to miss them altogether. (*Id.* at ¶ 25).

Defendants argue that Limauro has failed to plead why his request to leave an hour early each week was necessary for him to perform the essential functions of his job. Courts have granted *summary judgment* to defendant employers when the plaintiff failed to show why a request for accommodation was necessary for the job. *See, e.g., Flynn v. McCabe & Mack LLP*, No. 15-cv-5776, 2018 WL 794631, at *8 (S.D.N.Y. Feb. 8, 2018). But at the motion-to-dismiss stage, Limauro's allegations have raised an inference that his requests were reasonable in light of his disabilities. Limauro's PTSD and major depressive disorder "substantially limits" his "ability to sleep, regulate his emotions, be happy, and to socialize." (*Id.* at ¶ 15). Having relief – however

minor – from those symptoms by seeing a therapist regularly, and by seeing the therapist without the additional anxiety of having to rush to make the appointment in time, naturally raises the inference that the request would have enabled Limauro to better perform his job. This is sufficient for me to conclude that Limauro has pled sufficient facts to state a claim for failure to accommodate.

Defendants also argue that Limauro's failure-to-accommodate claim based on his request to leave early is time barred because he made his original request in September 2018, which was more than 300 days before he filed his charge of discrimination with the EEOC. In New York, an employee seeking to file a grievance against his employer must file a discrimination charge with the EOOC within 300 days of the employment practice. *See Gomez v. N.Y.C. Police Dep't*, 191 F. Supp. 3d 293, 301 (S.D.N.Y. 2016). Here, however, Limauro's complaint states that he continued renewing his requests to leave an hour early from work through November 2018, which would be within the 300-day limitations period. The ADA permits claims to be filed even if the original discriminatory act fell outside the 300-day period where "the discriminatory acts were part of a continuing policy and practice of prohibited discrimination," or "where specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice." *Giannattasia v. City of New York*, 2011 WL 4629016, at *3 (E.D.N.Y. Sep. 30, 2011) (citations omitted). It appears, based solely on the allegations of the complaint, that Limauro made at least one request for permission to leave early to attend therapy that is not time-barred, which is sufficient to prevent dismissal of his federal claims relating to his requests for a mental-health accommodation.

There is also no statute-of-limitations issue with regard to Limauro's failure-to-accommodate claim under the NYSHRL or the NYCHRL, each of which has a three-year statute

of limitations.  *See, e.g., Bermudez v. City of New York*, 783 F. Supp. 2d 560, 573 (S.D.N.Y. 2011). Thus, even if there were a limitations problem under the ADA, there would be none under the state or city statutes.

2.   <u>Requests Related to Limauro's Physical Disabilities</u>

After Limauro returned to work from medical leave, he presented ConEd with ConEd's own doctor's recommendation that he limit his walking and standing to between three to six hours per day. But according to the complaint, ConEd (through Limauro's supervisor, Janusz) was unwilling to engage in any conversation about *any* accommodations related to Limauro's physical disabilities, or to otherwise engage in any type of interactive dialogue to come to a consensus on how to move forward. Even though the accommodations were intended to be temporary, until Limauro fully recovered from the flareups in his gout and osteoarthritis, ConEd was unwilling to explain why it thought he was unable to perform his job, or why his request could not be accommodated. (*Id*. at ¶¶ 51–57).

These allegations are more than sufficient to make out a plausible claim that ConEd failed to accommodate Limauro's requests regarding to his physical disabilities. ConEd claims that Limauro's request was unreasonable, but the question of reasonableness is a fact-based inquiry that is reserved for when there is a more robust record upon which to evaluate the defense. Limauro's complaint clearly identifies an accommodation – *recommended by ConEd's own doctor* – that he claims would have allowed him to perform his job while he was recovering. Even if the request were somehow unreasonable (which, at first glance, it is not), the complaint also clearly details that ConEd failed to engage in any type of dialogue with Limauro about alternative accommodations – as it was obligated to do under the ADA.

Limauro has stated failure-to-accommodate claims (along with his disability-discrimination claims) upon which relief can be granted under the ADA, the NYSHRL, and the NYCHRL. Therefore, the motion to dismiss Counts I, II and III is denied.

### D. Retaliation (Counts V, VI, and VII)

Limauro also alleges in Counts V (NYCHRL), VI (NYSHRL) and VII (ADA) that the Defendants retaliated against him when he spoke out asking for accommodations.

To state a claim for retaliation under the ADA, a plaintiff-employee must plead that: "(1) the employee was engaged in an activity protected by the ADA, (2) the employer was aware of that activity, (3) an employment action adverse to the plaintiff occurred, and (4) there existed a causal connection between the protected activity and the adverse employment action." *Sarno v. Douglas Elliman-Gibbons & Ives, Inc.*, 183 F.3d 155, 159 (2d Cir. 1999). This framework is effectively the same under both the NYSHRL and the NYCHRL, although instead of requiring that the employer take an adverse employment action, the NYCHRL requires only "that something happened that would be reasonably likely to deter a person from engaging in protected activity." *Mihalik*, 715 F.3d at 112 (citation omitted).

Although the *framework* upon which to evaluate the retaliation claim is effectively the same in that all of the just-discussed elements must be satisfied to establish a *prima facie* claim, the New York state and city statutes differ from the ADA as to what qualifies as a "protected activity." *See Piligian v. Icahn Sch. of Med. at Mount Sinai*, No. 17-cv-1975 (ALC), 2020 WL 5758752, at *10 (S.D.N.Y. Sep. 28, 2020).

1. Retaliation Claim Under the ADA (Count VII)

Under the ADA, "Requests for disability accommodation and complaints, whether formal or informal, about working conditions related to one's alleged disability are protected activities."

*Gorbea v. Verizon New York, Inc.*, No. 11-cv-3758 (KAM) (LB), 2014 WL 917198, at *11 (E.D.N.Y. Mar. 10, 2014); *see also Goonan v. Fed. Res. Bank of N.Y.*, 916 F. Supp. 2d 470, 485 (S.D.N.Y. 2013). Since ConEd fired Limauro three days after he requested an accommodation for his physical disabilities, this is enough to raise an inference that ConEd fired Limauro *because* he engaged in the protected activity. Limauro has pled a claim for retaliation under the ADA.

      2.  Retaliation Claims Under the NYSHRL and the NYCHRL (Counts V and VI)

Limauro and the Defendants disagree over whether a request for an accommodation qualifies as a protected activity under the NYSHRL and NYCHRL. Several decisions from the Southern District of New York have reflexively concluded that, because a request for an accommodation qualifies as a protected activity under the ADA, it similarly qualifies under the state and city counterparts. *See, e.g., Pacheco v. Park South Hotel, LLC*, No. 12-cv-9127 (PAC), 2014 WL 292348, at * 4 (S.D.N.Y. Jan. 27, 2014). But a closer examination of the decisions of New York courts – which this Court is obligated to follow when interpreting New York law – reveals that at the time the events precipitating this lawsuit took place, "Under both New York State and New York City Human Rights Laws, a request for reasonable accommodation is not a protected activity for purposes of a retaliation claim." *Witchard v. Montefiore Med. Ctr.*, 960 N.Y.S. 2d 402, 403–04 (App. Div. 1st Dep't 2013); *see also D'Amico v. City of New York*, 73 N.Y.S.3d 540, 558–59 (App. Div. 1st Dep't 2018).

New York City has since amended its Human Rights Law, effective November 11, 2019, to make "clear that requesting a reasonable accommodation is a protected activity under the NYCHRL." *Piligian*, 2020 WL 5758752, at *10. But that amendment had not yet taken effect at the time Limauro made his requests to ConEd, and there is no indication that the New York City

Council intended for the amended NYCHRL to apply retroactively. *Id*. at *12. Thus, I must adhere to the New York courts' prior interpretation of the statutes.

The fact that New York courts have interpreted that requests for accommodation do not qualify as "protected activities" for purposes of a retaliation claim is – it appears to me – because the NYSHRL and NYCHRL both prohibit retaliation only when the employee "has opposed any practice [or practices] *forbidden* under" the law. N.Y.C. Admin. Code § 8-107(7); N.Y. Exec. Law § 296 (1)(e) (emphasis added). Making a mere *request* for an accommodation is not an opposition to an otherwise "forbidden" practice. Indeed, an employer can deny initial requests to accommodate as long as it engages in an interactive dialogue to come to an agreement with the employee. Thus, a plaintiff who alleges that he was fired because he had merely requested an accommodation – without complaining about an otherwise unlawful activity that was already taking place – does not state a claim under the NYSHRL or the pre-amendment NYCHRL. *See, e.g., McKenzie v. Meridian Capital Grp., LLC*, 829 N.Y.S. 2d 129, 129 (N.Y. 2d Dep't 2006). New York courts have thus explained:

> In order to assert a viable claim of retaliatory discharge, an employee must demonstrate that there was a reasonable basis to believe that his or her employer engaged in an actionable discriminatory practice and that the employer discharged the employee as a result of the employee's *opposition* to that practice.

*Ibid*. (emphasis added). Although this interpretation of the statute appears silly – as it would permit an employer to fire an employee the moment the employee requested an accommodation – but would forbid the firing if the employee then complained about the requested accommodation being denied, it is the construction that the New York courts have given to a New York statute.

Nevertheless, here, Limauro has pled enough facts to indicate that he had *opposed* and *complained* about ConEd's decision not to engage in the required iterative discussion about an accommodation – which is forbidden under the law. The complaint alleges that after ConEd denied

20

the request, Limauro made several complaints to his supervisor, Janusz about the way that he was being treated upon his return to work. (*Id.* at ¶¶ 66, 68). Since ConEd was obligated to engage in an interactive dialogue about Limauro's accommodation requests, but did not do so, Limauro's subsequent complaints about this would qualify as a protected activity. And since Limauro was fired soon after he made these complaints, he has pled sufficient facts to state a retaliation claim under both the NYSHRL and the NYCHRL.

### E.  Interference and Retaliation Claim Under the FMLA (Count IV)

There are two types of claims arising under the FMLA – interference with an FMLA right, and retaliation. Limauro's complaint alleges both types of FMLA violations.

To establish a retaliation claim under the FMLA, a plaintiff "must establish that: (1) he exercised rights protected under the FMLA; (2) he was qualified for his position; (3) he suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent." *Potenza v. City of New York*, 365 F.3d 165, 168 (2d Cir. 2004).

To establish an interference claim:

> a plaintiff must establish: (1) that she is an eligible employee under the FMLA; (2) that the defendant is an employer as defined by the FMLA; (3) that she was entitled to take leave under the FMLA; (4) that she gave notice to the defendant of her intention to take leave; and (5) that she was denied benefits to which she was entitled under the FMLA.

*Graziadio v. Culinary Inst. of Am.*, 817 F.3d 415, 424 (2d Cir. 2016). Benefits of the FMLA include, but are not limited to, being "restored by the employer to the position of employment held by the employee when the leave commenced" and being "restored to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment." 29 U.S.C. § 2614 (a) (1) (A), (B).

Limauro has sufficiently pled an FMLA retaliation claim. He took FMLA medical leave – for which he qualified – in March 2019, thereby exercising a protected right under the FMLA. And as discussed earlier in relation to his other counts, Limauro has adequately pled that he was fired upon his return from FMLA leave simply because of his disability – to which his leave was related. All that is required to plead an FMLA retaliation claim is that the taking of FMLA leave "constituted 'a negative factor in [Defendants'] decision' to take an adverse employment action against him." *Smith*, 769 F. Supp. 2d at 472 (quoting *Sista v. CDC Ixis N. Am., Inc.*, 445 F. 3d 161, 176 (2d Cir. 2006)). The close timing between Limauro's return to work and his firing raises an inference that he was fired for exercising his FMLA right to go on medical leave.

Limauro has also sufficiently pled that ConEd violated the FMLA by interfering with his protected rights under the act. Defendants argue that there was no interference because Limauro was assigned back to his original position when he returned from leave. They claim that Limauro's complaint about being assigned online-only work the few days that he was back does not constitute a denial of benefits, because all employees must undergo similar training. But this argument misses the bigger picture. Limauro was fired. He no longer had a job three days after he returned from leave. One of the FMLA's protected benefits is that the employee be restored to a similar position when he returns from work. That benefit is denied when the employee is fired – plausibly as a result of taking FMLA leave. Limauro has thus stated a claim for FMLA interference.

## F. Failure to Pay Overtime Under the New York Labor Law (Count VIII)

A claim for unpaid overtime under the NYLL is evaluated under the same standard as the federal Fair Labor Standards Act ("FLSA"). *See Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 200 (2d Cir. 2013). "[T]o survive a motion to dismiss [an FLSA overtime claim], Plaintiffs must allege sufficient factual matter to state a plausible claim that they worked

compensable overtime in a workweek longer than 40 hours." *Ibid*. (quoting *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 114 (2d Cir. 2013)). The Second Circuit has held that a plaintiff must plead that he worked more than forty hours a week with "specificity" and cannot simply allege that he worked "more" than forty hours without more facts. *Dejesus v. HF Mgmt. Servs., LLC*, 726 F. 3d 85, 89 (2d Cir. 2013).

Limauro has not satisfied his burden of pleading a plausibly viable failure-to-pay-overtime claim.

Limauro states that his normal shift was from "7am to 3:30pm" from Monday through Friday, although he "regularly worked more hours by coming in earlier and staying later." (*Id*. at ¶ 30). That allegation lacks specificity and does not state a claim upon which relief could be granted.

Of course, if Limauro were expected to work 8.5 hours a day with no breaks for lunch or otherwise, then he would have routinely worked at least 42.5 hours a week *before* any additional time was factored in. It is possible that Limauro is "not merely claiming that [he] 'occasionally,' 'typically,' or 'regularly' worked more than 40 hours some weeks" but rather that he consistently worked more than 40 hours a week – per his regular schedule – and was not paid overtime. *Kuck v. Planet Home Lending, LLC*, 354 F. Supp. 3d 162, 168 (E.D.N.Y. 2018). However, it is customary for employees to have shifts that include a lunch break or some other break(s), so in order to plead a plausible claim of failure to pay overtime under that theory, Limauro's would need to plead that he was not allowed any breaks during his shift. He did not so plead.

As pleaded, then, Count VIII must be dismissed. I will dismiss it without prejudice; Limauro has twenty-one days to file an amended complaint, limited to amending Count VIII with the specificity needed to survive a motion to dismiss. He can either drop this claim or come up

with more facts that plausibly suggest that ConEd violated the Labor Law by failing to pay him overtime.

## CONCLUSION

For the reasons set forth above, Defendants' collective motion to dismiss is DENIED as to all counts except Count VIII; as to that count, it is GRANTED, without prejudice to amend within 21 days of the date of this decision.

The Clerk of the Court is respectfully directed to remove the motion at Dkt. No. 10 from the Court's list of pending motions.

Dated: February 9, 2021

_____

Chief Judge

BY ECF TO ALL COUNSEL